UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M COMPANY,<br><br>    Plaintiff,<br>vs.<br><br>COVINGTON & BURLING LLP,<br><br>    Defendant. | Case No. 0:12-cv-01800-DSD-FLN |

**COVINGTON & BURLING LLP'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

  This lawsuit arises out of a related action pending in Hennepin County District Court in which Covington & Burling LLP ("Covington") represents a long-time client, the State of Minnesota, in an action seeking to hold 3M Company ("3M") liable for its unlawful releases of large quantities of perfluorochemical wastes into Minnesota's environment ("Pollution Suit"). Nearly sixteen months after learning that Covington was representing the State in the Pollution Suit, and in the face of mounting evidence of 3M's improper release of perfluorochemical wastes into the waters of Minnesota, 3M moved to disqualify Covington from serving as counsel to the State. Immediately following a hearing on that motion before Judge Philip C. Carruthers, but before he issued a ruling on the motion, 3M sought the recusal of Judge Carruthers. He recused himself on July 24, 2012, and the motion to disqualify remains pending, now before Judge Robert A. Blaeser.

  This federal lawsuit is an effort by 3M to get a second bite at the apple in its efforts to deprive the State of Minnesota of its chosen counsel, and to impede the orderly

progress of the Pollution Suit.  3M's federal complaint against Covington amounts to little more than a press release designed to disparage Covington and pressure the firm to abandon its representation of the State of Minnesota—a strategy underscored by the press campaign mounted by 3M's outside counsel upon filing the lawsuit.

The claims against Covington are completely without merit, which Covington will demonstrate at the appropriate time.  This federal lawsuit, however, must be dismissed for a more fundamental reason:  this Court has no jurisdiction to hear the case.[1]

Where a plaintiff brings a suit under the federal diversity statute, the plaintiff must demonstrate that the parties are completely diverse in citizenship.  And where, as here, a plaintiff sues a partnership, the plaintiff must show that it is diverse from *each* of the partnership's members.  Yet 3M fails to offer *any* allegations that Covington's partners are completely diverse from 3M.  That alone is grounds for dismissal.  The complaint's jurisdictional defect, however, runs much deeper than a mere pleading failure:  because some Covington partners are American citizens domiciled abroad, and American citizens domiciled abroad cannot sue or be sued in federal court in diversity, Covington cannot be sued in federal court on the basis of diversity jurisdiction.  Accordingly, this lawsuit must be dismissed for lack of subject matter jurisdiction.

---

[1] If not addressed now, this defect, which cannot be waived, could be raised at any stage of the proceedings in this case, even after a judgment in favor of Covington.  *See State of Mo. ex rel. Mo. Highway & Transp. Comm'n v. Cuffley*, 112 F.3d 1332, 1334 (8th Cir. 1997).

## BACKGROUND

For about eight years beginning in late 1992, Covington represented 3M on several matters before the federal Food & Drug Administration. (Compl. ¶ 21.) During that representation, which ended long ago, Covington loyally and zealously represented 3M before the FDA, and did so with considerable success. (Compl. ¶¶ 24, 26.) Covington provided that same quality of service to 3M in 2010, when it was asked by the company to perform a discrete assignment regarding the company's employee benefits program. (Compl. ¶ 28.) Covington's representation of 3M ended when it completed its work on the employee benefits program in September 2010—a fact confirmed by Covington in a letter sent to 3M on December 7, 2010, and acknowledged by 3M in an email of December 22, 2010. (Compl. ¶¶ 29–30.) Although Covington's relationship with 3M formally ended upon completion of that assignment, Covington continued to safeguard the confidences of 3M—as it continues to do to this day—and continued to adhere to each of the professional obligations it owed to its former client.

Following the conclusion of its representation of 3M, Covington began to represent the State of Minnesota, a long-time client on environmental matters, in its lawsuit against 3M arising out of 3M's improper releases of massive quantities of perfluorochemical wastes into the Minnesota environment—a matter wholly unrelated to the employee benefits work that Covington performed for 3M in 2010, the FDA work that Covington performed for 3M in the 1990s, or any other work performed by

3

Covington for 3M.[2]  (Compl. ¶ 31.)  3M does not allege, and the facts do not show, that any of the Covington attorneys representing the State of Minnesota in the Pollution Suit had previously represented 3M on FDA issues or that they received confidential information from 3M.

In November 2011, 3M's General Counsel wrote to Covington acknowledging that, at the outset of the Pollution Suit, 3M had considered whether Covington's representation of 3M might pose a conflict, and had decided not to raise the conflicts issue.  For six months following that letter, 3M continued to litigate the matter against the State, knowing, of course, that Covington was continuing to representing the State.  It was not until May 14, 2012, as the deadline for fact discovery was approaching, that 3M filed a motion to disqualify Covington and thereby derail the Pollution Suit.  Following oral argument on that motion before Judge Carruthers, 3M filed this lawsuit.

## JURISDICTIONAL FACTS[3]

3M Company is a Delaware corporation with its principal place of business in Minnesota.  (Compl. ¶ 7.)

Although the Complaint alleges that Covington is a "limited liability company" (Compl. ¶ 8), Covington is in fact a District of Columbia limited liability partnership with

---

[2] The other matters for which 3M retained Covington as counsel were all initiated before January 2005, more than seven years ago.

[3] On a motion to dismiss for lack of subject matter jurisdiction, the Court may consider evidence submitted by the parties.  *See Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005).  Accordingly, Covington offers the following jurisdictional facts, largely set forth in declarations filed with this motion.

offices in Washington, D.C.; Beijing; Brussels; London; New York; San Diego; San Francisco; and Silicon Valley.  Given its global presence, many Covington partners are located abroad, including a number of U.S. citizens who are currently domiciled abroad, and do not intend to return to the United States.  As set forth in the declarations filed herewith, these partners include:

### A.     David Hull

Mr. Hull is a partner in Covington's Brussels, Belgium office.  (Declaration of David W. Hull ("Hull Decl.") ¶ 1.)  Mr. Hull is an associate member of the Brussels bar, a registered foreign lawyer in Belgium, and an admitted solicitor of the Senior Courts of England and Wales.  (Hull Decl. ¶ 4.)

Although a U.S. citizen, Mr. Hull moved to Belgium in 1983 as an LLM student and has worked in Belgium from the time of his graduation through the present—save only a stint in the United States from 1987 to 1992.  (Hull Decl. ¶ 3.)  At the time he left the United States in 1992, Mr. Hull intended to make Belgium his permanent home, and sold his residence in the United States.  (Hull. Decl. ¶ 5.)  He has lived in Belgium continuously since 1992, and has not maintained a residence, or a personal mailing address, in any state of the United States since moving to Belgium.  (Hull Decl. ¶¶ 5–6.)  He owns his home in Belgium, and maintains his personal property, such as his car and his home furnishings, in Belgium as well.  (Hull Decl. ¶ 6.)  Mr. Hull files taxes in Belgium, has a Belgian driver's license, and maintains a Belgian bank account.  (Hull Decl. ¶¶ 8–9.)  Additionally, his personal physician, dentist, and accountant are located in Belgium, and he is a member of a social club in Brussels.  (Hull Decl. ¶¶ 10–11.)

Although Mr. Hull personally pays U.S. federal taxes, he does not pay income taxes as a resident of any state. (Hull Decl. ¶ 8.) He is not registered to vote in any state elections, but he, like all U.S. citizens living abroad, is authorized to vote in presidential elections. (Hull Decl. ¶ 8.) Mr. Hull does not intend to establish a residence in any state of the United States, and intends to remain in Belgium indefinitely. (Hull Decl. ¶¶ 5, 12–13.)

### B.     Michelle Edwards

Ms. Edwards is a partner in Covington's Beijing office. (Declaration of Michelle Edwards ("Edwards Decl.") ¶ 1.) She is a citizen of the United States. (Edwards Decl. ¶ 2.) In mid-2005, she left the United States to live in China while she was on maternity leave from Wilson Sonsini Goodrich & Rosati, P.C. (Edwards Decl. ¶ 3.) She began working again for Wilson Sonsini in February 2006, and worked for the Shanghai representative office of that firm from its official opening in 2007 until November 2011 (Edwards Decl. ¶¶ 3, 5.) She was elected partner at Covington in February 2012, where she is a member of the firm's corporate practice group. (Edwards Decl. ¶ 5.)

When Ms. Edwards left the United States, she intended to remain in China indefinitely. (Edwards Decl. ¶ 3.) To this end, she sold her home in the United States and now owns a home in China, where she lives with her husband and children. (Edwards Decl. ¶¶ 5–6.) Since then, she has lived in China continuously. (Edwards Decl. ¶ 4.) Ms. Edwards files Chinese taxes and does not recall voting in any elections held in the United States since her departure. (Edwards Decl. ¶¶ 8–9.) She holds a

Chinese driver's license, maintains Chinese bank accounts, and sees a Chinese physician. (Edwards Decl. ¶¶ 11–12).

Ms. Edwards is a permanent resident of Beijing and has no present intent to establish residence in any state of the United States. (Edwards Decl. ¶ 13.)

C.   **Daniel Cooper**

Mr. Cooper is a partner in Covington's London, United Kingdom office. (Declaration of Daniel P. Cooper ("Cooper Decl.") ¶ 1.) He is a dual citizen of the United States and the United Kingdom. (Cooper Decl. ¶¶ 2, 3.) Mr. Cooper started working with Covington in 1996, and moved to the United Kingdom in 1998 to assume a position in Covington's London office. (Cooper Decl. ¶ 4.) Mr. Cooper has worked at Covington since arriving in the United Kingdom. (Cooper Decl. ¶ 5.) He is a solicitor of the Senior Courts of England and Wales. (Cooper Decl. ¶ 5).

When Mr. Cooper left the United States for the United Kingdom, he had no intention to reside elsewhere, and he has lived in the United Kingdom continuously since his departure from the United States. (Cooper Decl. ¶ 6.) He owns his home in the United Kingdom, does not maintain a residence in the United States, and all of his personal property is located in the United Kingdom. (Cooper Decl. ¶ 8.) Mr. Cooper votes in United Kingdom local and national elections, and has a United Kingdom driver's license. (Cooper Decl. ¶¶ 11, 12.) His children are dual U.S. and United Kingdom nationals who attend English schools. (Cooper Decl. ¶ 9.)

Mr. Cooper files United Kingdom and U.S. federal taxes, but he has not filed income tax as a resident of any state since his departure from the state of Delaware in

7

1998.  (Cooper Decl. ¶¶ 7, 10.)  Though he files his personal United Kingdom taxes as a non-domiciliary, that status reflects that Mr. Cooper has no present intent to leave the United Kingdom but has not determined to stay permanently in the United Kingdom.  (Cooper Decl. ¶ 10.)  Mr. Cooper has no present plans to reside in any state of the United States.  (Cooper Decl. ¶ 16).  Mr. Cooper's last U.S. residence was in the state of Delaware, where he lived in 1998.  (Cooper Decl. ¶ 7.)  When he settled in Delaware, he intended to do so permanently and, to that end, registered to vote in Delaware and paid taxes in Delaware.  (Cooper Decl. ¶ 7.)

      **D.**     **William Park**

Mr. Park is a Covington partner who lives, and works, in South Korea.  (Declaration of William Park ("Park Decl.") ¶¶ 1, 5.)  Mr. Park is a U.S. citizen who was born in South Korea.  (Park Decl. ¶ 2.)  After spending some time in the United States, Mr. Park moved back to South Korea in 2001 with the intent to stay there indefinitely.  (Park Decl. ¶ 3.)  Mr. Park will be overseeing Covington's Seoul, South Korea office once it opens, which he expects will happen in the next few months.  (Park Decl. ¶ 5.)  Until that time, he is affiliated with Covington's San Francisco office, although he lives, and works, in South Korea.  (Park Decl. ¶ 5.)

Mr. Park has been living in South Korea continuously since he moved there in 2001.  (Park Deck. ¶ 3.)  He lives with his wife, who is a South Korean citizen, and his children, in a house owned by his wife.  (Park Decl. ¶ 6.)  He holds a South Korean driver's license, maintains South Korean bank accounts, and has his personal physician

and dentist in South Korea. (Park Deck. ¶¶ 10–12.) Mr. Park goes to church in South Korea, but does not do so in any state of the United States. (Park Decl. ¶ 12.)

To be sure, Mr. Park maintains some connections with the state of California, many of which are residual contacts from his time there before his departure for South Korea. *See, e.g.*, Park Decl. ¶ 10 (driver's license); Park Decl. ¶ 11 (bank accounts). And although he owns a house in California, this is merely a "second home" that his family uses for vacation twice a year. (Park Decl. ¶ 6.) Mr. Park's home is in South Korea, and he intends to remain there indefinitely. (Park Deck. ¶ 13.)

## ARGUMENT

3M's claims against Covington are without merit and ultimately will be rejected. But this suit must be dismissed for a more basic reason: this Court lacks jurisdiction over the complaint. The complaint raises no federal question, and 3M alleges none of the facts necessary to support its conclusory assertion that "complete diversity of citizenship exists" (Compl. ¶ 10), as required for jurisdiction under the federal diversity statute, 28 U.S.C. § 1332. In fact, no such diversity exists.

3M's utter failure to plead facts supporting diversity jurisdiction is itself a defect in 3M's complaint, *see Barclay Square Props. v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 1990),[4] but this Court need not limit its analysis

---

[4] *See also Walker ex rel. Walker v. Norwest Corp.*, 108 F.3d 158, 162 (8th Cir. 1997) ("The fact that the Walkers did not allege the citizenship of the defendants convinces us that the district court did not abuse its discretion in determining that Rule 11 sanctions were appropriate."); *Life Share Collateral Holdings, LLC v. Hood*, No. 11-3637, 2011 WL 6402140, at *2 (D. Minn. Dec. 20, 2011) ("Having failed to allege the parties' citizenship, [plaintiff] has not satisfied the burden of establishing diversity jurisdiction.").

to 3M's pleading failures. Rather, in resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider evidence submitted by the parties. *See Green Acres Enters.*, 418 F.3d at 856. That evidence, set forth in the declarations filed herewith, demonstrates that 3M's assertion that "complete diversity of citizenship exists" is not only unsubstantiated, but also obviously wrong.[5]

### A. Federal Diversity Jurisdiction Requires Complete Diversity Between the Parties.

Under the federal diversity statute, a plaintiff must establish both that the amount in controversy exceeds $75,000 and that the parties are completely diverse in citizenship. *See* 28 U.S.C. § 1332(a). Complete diversity means that "no defendant holds citizenship in the same state where any plaintiff holds citizenship." *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445 (8th Cir. 2010) (internal quotation marks omitted), *cert. denied*, 132 S. Ct. 94 (2011).

### B. 3M Must Be Diverse from Each Member of Covington.

For the purposes of determining diversity, a natural person is a citizen only of the state where he or she is domiciled. *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990). The citizenship of a limited liability partnership such as Covington is determined by examining the citizenship, and therefore the domicile, of each individual partner. *See Buckley v. Control Data Corp.*, 923 F.2d 96, 97 (8th Cir. 1991); *Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996, 1003 (8th Cir. 1990); *accord Carden v. Arkoma*

---

[5] Although Covington presents declarations in support of its motion to dismiss, it is 3M that bears the burden of establishing that jurisdiction exists. *Green Acres Enters.*, 418 F.3d at 856.

*Assocs.*, 494 U.S. 185, 195–96 (1990).[6]  Accordingly, 3M's citizenship must be completely diverse from the citizenship of each of Covington's partners.  *Junk*, 628 F.3d at 445.  The presence of even a single non-diverse partner is enough to shatter diversity. *See Alumax*, 912 F.2d at 1003 ("[T]he actual citizenship of *each* member of a partnership must be considered in determining whether diversity jurisdiction exists." (emphasis added)); *accord Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 185 (3d Cir. 2008).

### C. U.S. Citizens Domiciled Abroad Are Not Diverse for Purposes of 28 U.S.C. § 1332.

The federal diversity statute extends federal jurisdiction to actions involving (1) "citizens of different States," 28 U.S.C. § 1332(a)(1); and (2) "citizens of a State and citizens or subjects of a foreign state," *id.* § 1332(a)(2).  In order to be a citizen of a State within the meaning of § 1332(a)(1), "a natural person must both be a citizen of the United States *and* be domiciled within the State."  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989); *Yeldell*, 913 F.2d at 537.  An American citizen domiciled abroad therefore cannot be a "citizen of a State."  *Newman-Green*, 490 U.S. at 828.

Nor can an individual holding U.S. citizenship, even if living abroad, be deemed a citizen or subject of a foreign state under § 1332(a)(2).  *See id*.  This is true even if that individual is a dual citizen.  In those cases, only the U.S. citizenship is recognized for diversity purposes.  *See Buchel-Ruegsegger v. Buchel*, 576 F.3d 451, 454 & n.3 (7th Cir.

---

[6] Although 3M's complaint improperly labels Covington a "limited liability company," the rule governing the citizenship of a limited liability company is the same as the rule governing the citizenship of a limited liability partnership.  *See OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 & n.4 (8th Cir. 2007).

2009) (collecting cases); *Frett-Smith v. Vanterpool*, 511 F.3d 396, 400 (3d Cir. 2008); *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996).

Applying these principles, federal courts, including the U.S. Supreme Court, have uniformly held that U.S. citizens domiciled abroad cannot sue or be sued under the federal diversity statute. *See, e.g.*, *Newman-Green*, 490 U.S. at 828; *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1341 (11th Cir. 2011); *Swiger*, 540 F.3d at 184; *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990); *Smith v. Carter*, 545 F.2d 909, 911 (5th Cir. 1977). Courts have applied these principles to partnerships as well, holding that where the partnership includes even a single U.S. citizen domiciled abroad, diversity cannot exist. *See Swiger*, 540 F.3d at 184; *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003); *Cresswell*, 922 F.2d at 68; *see also Jacobs Trading, LLC v. Ningbo Hicon Int'l Indus. Co.*, No. 11-354, 2011 WL 781069, at *1 (D. Minn. Feb. 28, 2011) (citing *Swiger* and *Cresswell*). As the Second Circuit explained in *Cresswell* when addressing the diversity of the law firm of Sullivan & Cromwell LLP:

> If in fact *any* of [Sullivan & Cromwell's] foreign-residing United States citizen partners are domiciled abroad, a diversity suit could not be brought against them individually; in that circumstance, since for diversity purposes a partnership is deemed to take on the citizenship of *each* of its partners, a suit against [Sullivan & Cromwell] could not be premised on diversity.

922 F.2d at 69 (citations omitted) (emphases added); *see also ISI Int'l*, 316 F.3d at 733 ("One of Scott & Aylen's partners is a U.S. citizen domiciled in Canada; she has no state

citizenship, so the diversity jurisdiction is unavailable."). For that same reason, diversity jurisdiction cannot exist here.

> **D.     Covington Cannot Be Sued in Federal Court Under Diversity Jurisdiction Because Some of Its Partners Are U.S. Citizens Domiciled Abroad.**

Covington's partnership includes numerous U.S. citizens who are domiciled abroad, including Mr. Hull, Ms. Edwards, Mr. Cooper, and Mr. Park, each of whom has submitted a declaration definitively establishing this fact.

Domicile requires only two elements: (1) a person's physical presence in a state or county; and (2) the person's intent to remain there indefinitely, or the absence of any intention to go elsewhere. *See Yeldell*, 913 F.2d at 537; *Blakemore v. Mo. Pac. R.R.*, 789 F.2d 616, 618 (8th Cir. 1986); *St. Onge v. McNeilus Truck & Mfg., Inc.*, 645 F. Supp. 280, 282 (D. Minn. 1986). The place where a person resides at any given time is presumed to be that person's domicile. *See King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007); *Slaughter v. Toye Bros. Yellow Cab Co.*, 359 F.2d 954, 956 (5th Cir. 1966). Mr. Hull, Ms. Edwards, Mr. Cooper and Mr. Park each reside abroad—and have for a number of years—and each has declared that they intend to remain abroad indefinitely and/or have no intention of establishing residence in any state of the United States. *See* Hull Decl. ¶ 13; Edwards Decl. ¶ 13; Cooper Decl. ¶ 16; Park Decl. ¶ 13.

The objective facts regarding Mr. Hull's, Ms. Edwards', Mr. Cooper's and Mr. Park's activities further confirm not only that they must be presumed to be domiciled abroad for diversity purposes, but also that this presumption cannot be overcome. When looking beyond the presumption, courts will consider: where an individual lists his or her

13

permanent address; lists his or her family's permanent address; files taxes; exercises civil and political rights; maintains real and personal property; maintains bank accounts; affiliates with social clubs; and sees physicians, lawyers, accountants, and dentists. *See Sheehan v. Gustafson*, 967 F.2d 1214, 1215–16 (8th Cir. 1992); *Rasidescu v. Univ. of Minn.*, No. Civ. 04-4066JRTFLN, 2005 WL 1593042, at *1 (D. Minn. July 1, 2005), *aff'd*, 190 F. App'x 524 (8th Cir. 2006) (per curiam); *see also Washington v. Hovensa LLC*, 652 F.3d 340, 344–45 (3d Cir. 2011); *Melendez-Garcia v. Sanchez*, 629 F.3d 25, 41 (1st Cir. 2010); *Greenblatt v. Gluck*, 265 F. Supp. 2d 346, 351 (S.D.N.Y. 2003). The court's task is to consider this "course of conduct" and determine the "real attitude and intention" with respect to domicile. *Rosenstiel v. Rosenstiel*, 368 F. Supp. 51, 57 (S.D.N.Y. 1973) (internal quotation marks omitted), *aff'd mem.*, --- F. App'x ----, 503 F.2d 1397 (2d Cir. 1974).

Here, Mr. Hull's, Ms. Edwards', Mr. Cooper's and Mr. Park's course of conduct, recounted in the jurisdictional facts section, conclusively demonstrates that they are not domiciled in any state of the United States. Although they maintain some incidental connections to several states of the United States, these facts are insufficient to demonstrate that their foreign home is not their "true fixed home and principal establishment," for the purposes of establishing diversity jurisdiction. *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks omitted); *see Ex parte Petterson*, 166 F. 536, 545 (D. Minn. 1908). Instead, under this analysis, Mr. Hull must be considered a Belgian domiciliary, Ms. Edwards a Chinese domiciliary, Mr.

Park a South Korean domiciliary, and Mr. Cooper a domiciliary of the United Kingdom.[7] Because Mr. Hull, Ms. Edwards, Mr. Park, and Mr. Cooper are American citizens but are no longer "citizens of a State," they cannot be sued in federal court under the diversity statute. And because they are members of the Covington partnership, Covington too cannot be sued in federal court in diversity. *See Swiger*, 540 F.3d at 184; *ISI Int'l, Inc.*, 316 F.3d at 733; *Cresswell*, 922 F.2d at 68–69.

## CONCLUSION

For the foregoing reasons, Covington respectfully requests that the Court dismiss 3M's complaint for lack of subject matter jurisdiction.

---

[7] In the event the Court determines that Mr. Cooper has not yet established domicile in the United Kingdom, his state of domicile would be Delaware, where he resided prior to his departure to England, was registered to vote, paid taxes, and intended to stay. *See Holmes v. Sopuch*, 639 F.2d 431, 434 (8th Cir. 1981) (citing *Janzen v. Goos*, 302 F.2d 421, 425 (8th Cir. 1962)) ("Once acquired, a person's domicile persists until a new one is acquired; it is presumed to continue until it is shown to have changed."). That domicile too would destroy diversity as 3M is a Delaware corporation.

Dated: August 16, 2012					Respectfully Submitted,

 s/ John W. Lundquist  
Thomas Fraser (#31641)  
John W. Lundquist (#65286)  
Nicole M. Moen (#329435)  
FREDRIKSON & BYRON, P.A.  
200 South Sixth Street, Suite 4000  
Minneapolis, MN 55402  
Telephone: (612) 492-7000  
Facsimile: (612) 492-7077  
tfraser@fredlaw.com  
jlundquist@fredlaw.com  
nmoen@fredlaw.com  

John K. Villa (D.C. #220392)*  
Joseph M. Terry (D.C. #473095)*  
WILLIAMS & CONNOLLY LLP  
725 Twelfth Street, N.W.  
Washington, D.C. 20005  
Telephone: (202) 434-5000  
Facsimile: (202) 434-5029  
jvilla@wc.com  
jterry@wc.com  
*(Pro Hac Vice Pending)  

*Attorneys for Defendant Covington & Burling LLP*